**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

-------------------------------------------------------

| | |
|---|---|
| Harry Dunleavy | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| The State of New Jersey, et. al | : |
| | : |
| Defendants. | : |

Civ. No. 05-3865 (DRD)

**O P I N I O N**

:

-------------------------------------------------------

*Appearances:*

Harry Dunleavy
16 Price Road
Augusta, New Jersey 07822

   *Plaintiff Pro se*

Anne Milgram
ATTORNEY GENERAL of New Jersey
By: Joseph M. Micheletti
Deputy Attorney General
Hughes Justice Complex
25 Market Street
Trenton, NJ 08625

   *Attorney for Defendants the State of New Jersey, The New Jersey Motor Vehicle
   Commission, Shawn Sheeky, Peter Harvey, Sherry Harrington, Daniel Sullivan, and
   Richard Codey*

1

KILLIAN & SALISBURY, PC
By: Carl A. Salisbury
77 Brant Avenue
PO Box 917
Clark, NJ 07066
*Attorney for Defendant Howard Burrell*

**<u>DEBEVOISE, Senior District Judge</u>**

Plaintiff, Harry Dunleavy ("Dunleavy"), commenced this action on August 4, 2005, by filing a complaint against his former employer, the New Jersey Motor Vehicle Commission ("MVC"), and various other parties, including the State of New Jersey, former New Jersey Governor Richard Codey, former New Jersey Attorney General Peter Harvey, MVC Commissioner Sharon Harrington, MVC Deputy Commissioner Shawn Sheeky, Director Daniel Sullivan, and Supervisor Robert Grill (collectively, the "State Defendants"), and Howard Burrell (collectively, the "Defendants," and, individually, by surname), claiming he was unlawfully terminated from his position as manager of the MVC Sussex County Office.  He amended the complaint and then applied for leave to file a Second Amended Complaint.  That motion will be granted, and the proposed Second Amended Complaint (the "Complaint") will be adopted by an order to be issued concurrently with this opinion.  The complaint does not clearly plead the legal bases giving rise to a cause of action, but the court is not unmindful of Dunleavy's <u>pro se</u> status and affords him the following liberal construction.

A reading of his single cause of action paragraph, together with the rest of the allegations in the Complaint, reveals claims for: political patronage discharge under 42 U.S.C. § 1983 ("§ 1983"); employment discrimination under § 1983, the Civil Rights Act of 1964 ("Title VII"), and

2

the Civil Rights Act of 1991 ("1991"); statutory claims under the Comprehensive Environmental

Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9610, the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 522, the New Jersey Right-to-Know Law ("NJFOIA"),

N.J. Stat. Ann. § 47:1A-1 (1963), the Occupational Safety and Health Act ("OSHA"), 29 U.S.C

660(c), the Clean Air Act ("CAA"), 42 U.S.C. § 7622, the Conscientious Employee Protection

Act ("CEPA"), N.J.S.A. 34:19-1; and, a state-law tort claim.  Defendants now move for summary

judgment dismissing the Complaint.


# I.  BACKGROUND

Dunleavy claims that the MVC wrongfully terminated his employment in retaliation for

his complaints about the physical condition of the Sussex County office, and in response to

political pressure.  The State Defendants maintain that the exclusive impetus for the termination

of Dunleavy's employment was a legitimate business rational, and that there is no evidence of

wrongful termination motivated by whistle-blowing or politics.

Dunleavy began working as a manager of the MVC's Sussex County office on December

15, 2003.  (Compl. ¶ 2, 4).  He alleges that he received a January 19, 2005 phone call from his

supervisor, MVC employee Grill, advising him that the MVC was discharging Dunleavy.

According to Dunleavy, Grill told Dunleavy that Burrell, then-Chairman of the Sussex County

Democratic Committee, had asked Grill's superiors to fire Dunleavy, and they agreed.  (Id. ¶ 4.)

Dunleavy has been an active participant in New Jersey politics, and has had active roles

working for the Sussex County Democratic Committee.  Before taking the job at the MVC,

Dunleavy had supported Charles W. Cart against Burrell in the contest for county chair of the Sussex County Democratic Committee. (Pl's Dep. at 40.) After winning that election, Cart paved the way for Dunleavy to obtain his position at the MVC. (Id.) Thereafter, mistrust and hostility characterized the relationship between Dunleavy and Burrell. (Id. at 47.) The Complaint states that Dunleavy had sued "Burrell, in the late 1990s, for libel, and the two reached a monetary settlement before trial." (Compl. ¶ "Conclusion".) Dunleavy believes that his acrimonious personal history with Burrell was a partial factor in Dunleavy's termination. (Id. at 47.)

Burrell succeeded Cart as county chair. Dunleavy alleges that, prior to his victory, Mr. Burrell stated that if he were elected chairmen, he would have Dunleavy terminated from the MVC. (Pl's Dep. at 190.) He alleges that when Grill called to notify Dunleavy of the employment termination, Grill informed him that "Mr. Burrell wanted [Dunleavy] fired and that he was adding fuel to the fire." (Id. at 42.) Plaintiff alleges that Mr. Burrell "was the cause for my firing,"(Id. at 205,) and that Mr. Burrell violated plaintiff's "civil rights . . . by going to my employer and getting me fired." (Id. at 206.)

However, Dunleavy also alleges that "the major reason for the firing was . . . the whistle blowing about the conditions in the office," (Pl's Dep. at 93,) and that he would have been fired anyway. Other than his and Grill's speculation, Dunleavy provides no evidence that Burrell pressured the MVC to fire him, or that Burrell actually affected Dunleavy's employment.

Plaintiff alleges that even ahead of politics as an improper impetus, he was terminated

for whistle-blowing. (Pl's Dep. at 59.)  On July 12, 2004, plaintiff allegedly reported that, among other poor conditions, mold was growing in his office. (Id. at 60.)  The shop steward also complained of mold in a grievance dated June 28, 2004.

In response to Mr. Dunleavy's and others' complaints, an inspection and evaluation of the office was conducted in August and October 2004.  (Id. at 105.)  Plaintiff also complained to Grill that MVC's IT department was poorly run. (Pl's Dep. at 106,) and that his staff employees were insubordinate. (Id. at 119.)  Plaintiff alleges that he was "not in good footing" with his superiors because of his various complaints.  Plaintiff alleges that "I do know the major reason for the firing was because of the whistle blowing about the conditions in the office . . .[a]nd on [a] few occasions the [computer] system in Trenton . . . and nothing was done about it."  (Id.)

In his Complaint and deposition testimony, Dunleavy explains that he named Grill, Sheeky and Sullivan as defendants because of their direct involvement in his alleged wrongful termination.  (Compl. ¶ 4; Pl's Dep. at 83-4.)  Dunleavy named Sharon Harrington because "she was head of the Motor Vehicle Commission" and "she did nothing about the firing and I believe . . . it was illegal." (Pl's Dep. at 81.)

According to the Complaint, Peter Harvey is named as a defendant because he was "the top law enforcement officer in the state, [and] is responsible for any illegal actions perpetrated or encompassed beneath his command." (Compl. ¶ Conclusion).  Former Governor Codey is named because "the buck stopped with Defendant Codey." (Id. ¶ 9).

It is not clear why Dunleavy named Grill as a defendant.

_____

## II. **DISCUSSION**

At the outset, the court wishes to note that several of Dunleavy's claims appear to be frivolous and the court is concerned that Dunleavy has caused unnecessary expense by laundry-listing various claims without familiarizing himself with the laws underlying the same, and without having even attempted to exhaust the various administrative procedures prerequisite to bringing certain of these claims.  Moreover, in view of the evidence and reasonable inferences, none of Dunleavy's claims survives summary judgment.  The federal claims, including the § 1983 political patronage allegations, must be dismissed on the merits.  Dunleavy's initiation of the CEPA claims waives his right to pursue any of the remaining state law claims on the same facts, and the court will not elect to extend supplemental jurisdiction to the remaining CEPA claims.

### A.     **Standard**

Summary judgment is appropriate when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party,"  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.  In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the nonmoving party by extending

any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999).

**B.  The Political Patronage Claim**

Dunleavy alleges that the Defendants' actions deprived him of his constitutional rights so as to give rise to a cause of action pursuant to § 1983[1].  In particular, he alleges that Defendants acted under color of state law when they fired him because of his political malignancy vis-a-vis Burrell.

The Supreme Court has provided two decisions which govern political patronage cases of this variety.  In Elrod v. Burns, 427 U.S. 347, 372-73, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and again in Branti v. Finkel, 445 U.S. 507, 514-15, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the Supreme Court ruled that public agencies may not constitutionally discharge employees based on their political affiliation when those employees' positions are neither policymaking nor advisory.  See Stephens v. Kerrigan, 122 F.3d 171, 176 (3d Cir.1997).  In applying these decisions, the Court of Appeals has closely followed the Supreme Court's reasoning that an employee's First Amendment right outweighs the government's interest in maintaining a system of political patronage.  Goodman v. Pennsylvania Turnpike Com'n, 293 F.3d 655, 663 (3d Cir. 2002).

---

[1] 42 U.S.C. 1983 provides:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

7

However, Branti and Elrod did carve out an exception for positions that are classified as policymaking or advisory, in which case the Government has the burden of proving that party affiliation is an appropriate requirement for the position. Branti, 445 U.S. at 518 ("[T]he ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved."); Elrod, 427 U.S. at 368, 96 S.Ct. 2673 (holding that party affiliation may be an acceptable requirement for an employee who "acts as an advisor or formulates plans for the implementation of broad goals"); see also Peters v. Del. River Port Auth., 16 F.3d 1346, 1353 (3d Cir.1994).

The Court of Appeals "has developed a three-prong test in political patronage discrimination cases." Goodman, 293 F.3d at 663.  To make out a claim of discrimination based on political association, "a public employee must prove (1) that the employee works for a public agency in a position that does not require a political affiliation, (2) that the employee maintained an affiliation with a political party, and (3) that the employee's political affiliation was a substantial or motivating factor in the adverse employment decision." Goodman, 293 F.3d at 663-4.

Dunleavy has not proved either the first or third prongs.  Dunleavy has provided no evidence that his was not a position for which a political affiliation is required.  Although the position does not appear to be one for which political affiliation would ordinarily be required, the burden is first on the plaintiff to prove that it is not such a position.  Elrod, 427 U.S. at 368. Only then does the burden switch to the Defendants to demonstrate that party affiliation is an

appropriate requirement for the effective performance of the public office involved.  Id.  The only evidence on this question appears to have been offered by the Defendants that the position is one for which a political affiliation is required, as argued at the December 17, 2007 oral argument.  Thus, Dunleavy's § 1983 claim is unavailing.

Dunleavy also fails to satisfy the third prong of the Goodman test.  The evidence supports that the MVC was aware of Dunleavy's political affiliation, so the court's analysis of the third prong looks for proof that this knowledge caused the discharge.  Id.  Here, there is no evidence of such causation, and Dunleavy presents only Grill's speculation, which is itself hearsay, as to Burrell's affect on Dunleavy's employment.  Considering this tenuous evidence is supported only by the acrimonious relationship shared by Burrell and Dunleavy, and in light of the conflicting evidence given by Dunleavy himself regarding the reasons for his discharge, it would not be reasonable for a jury to infer that the MVC's decision to discharge Dunleavy was politically-motivated.

Moreover, Dunleavy and Burrell were both members of the New Jersey Democratic Party, and Dunleavy's affiliation with that party was not the cause of his termination.  Although precedent provides avenues by which the court could find unlawful political wrangling even within the same party, the evidence here does not support such a conclusion.  On the contrary, if the evidence permits a reasonable inference that Burrell was involved in Dunleavy's discharge, the proof suggests that any unfavorable influence was born not of politics, but of a personal vendetta.  Employment decisions based exclusively upon personality conflicts do not give rise to claims under § 1983.  See Goodman, 293 F.3d at 655.

Thus, the section 1983 political patronage claims will be dismissed.  In any event, even if the evidence does support the elements for a § 1983 cause of action, the claims would be unavailing as against the state of New Jersey and the MVC because of the doctrine of sovereign immunity.  See  Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 98 (l984). The § 1983 claims are also unsustainable as against Harvey, Harrington and Codey for lack of evidence connecting them to Dunleavy's termination.  Finally, the § 1983 claim is unavailing as against Burrell because he was never Dunleavy's employer, and Dunleavy has presented no compelling argument why the court can and should extend liability to an abettor under the circumstances.

### C.      The Remaining Federal Law Claims

The remaining federal law claims against Defendants are not supported by the evidence, and summary judgment will be granted as to all Defendants on the claims regarding FOIA, CERCLA, CAA, OSHA, and discrimination pursuant to § 1983, Title VII, and 1991.

The FOIA claim is without merit as none of the Defendants is even affiliated with the federal government.  See Int'l Brhd of Elec. Wks v. U.S.HUD., 852 F.2d 87, 88 (3d Cir. 1988), and United States Dep't of Justice v. Julian, 486 U.S. 1 (1988).  The FOIA claims must be dismissed as against all of the Defendants.

The OSHA claim is unavailing as OSHA does not provide a private cause of action.  As this court has held, "[b]y its terms, [OSHA], 29 U.S.C. § 660(c) does not provide for a private right of action to be brought by an aggrieved plaintiff."  Kozar v AT&T, 923 F.Supp 67, 69 (D.N.J. 1996). Thus, Dunleavy's OSHA claim must be dismissed as to all of the Defendants.

The CAA claim is unavailing since Dunleavy failed to follow the procedural requirements for such a cause of action.  See 42 U.S.C. § 7622(b)(1).  Moreover, in any event, the CAA administrative procedure does not apply to these state Defendants.

Dunleavy's CERCLA claim is untenable in view of the evidence and circumstances.  A private cause of action filed by an employee pursuant to the whistle-blower provision of CERCLA must be preceded by the appropriate procedural steps.  42 U.S.C. § 9610(b)(1).  The law provides:

> Any employee or a representative of employees who believes that he has been fired or otherwise discriminated against by any person in violation of subsection (a) of this section may . . . apply to the Secretary of Labor for a review of such firing or alleged discrimination.

Id.  Here, there is no evidence that Dunleavy executed the administrative procedure, nor does Dunleavy even claim to have done the same.

In any event, the doctrine of sovereign immunity prevents the court from entertaining a CERCLA action against the State of New Jersey or any of its alter egos for CERCLA purposes.

The Complaint also alleges employment discrimination, and seeks damages pursuant to § 1983, Title VII and 1991.  The evidence does not support any of the discrimination claims[2], and the court will grant summary judgment as to all claims related to employment

---

[2]The court rejects Defendants' argument that Plaintiff could not bring both a title VII claim and section 1983 claim at once.  Although disparate impact claims are actionable only under Title VII (and not § 1983, since constitutional substantive due process protects only against intentional discrimination), both statutes provide a cause of action for intentional discrimination by a government employer.  See, e.g.,

discrimination.

### D.    The Claims Against Robert Grill

As a part of his Second Amended Complaint, Dunleavy has added Robert Grill as a

Defendant.  Dunleavy provides no evidence regarding any of the federal-law claims that would

support a finding of liability against Grill.  The Complaint includes allegations for state-law

claims, including an implied claim for defamation, but those are more appropriately handled by

New Jersey state courts (See Part E, infra).  Accordingly, the Complaint will be dismissed as

against Robert Grill.

### E.    The State Law Claims

In his Complaint, Dunleavy alleges he is entitled to an award under CEPA, NJFOIA,

and also–apparently based upon an unpled claim in tort–for emotional distress and punitive

damages.  Under the circumstances, the court must determine whether to extend supplemental

jurisdiction to these remaining claims.

Congress has vested in district court judges the discretion to determine whether to

exercise supplemental jurisdiction[3].  De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 309 (3d

---

[3] Under 28 U.S.C. § 1367(c), District courts may decline to exercise supplemental
jurisdiction where:
(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has
original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Cir. 2003).  At least one of the acceptable reasons for not extending jurisdiction–"the district court has dismissed all claims over which it has original jurisdiction"–applies here.  In light of the particular interest the state has in shaping and directing a self-governing law like CEPA, which appears to be the chief remaining claim, the court elects to exercise its discretion to not extend supplemental jurisdiction to any of the remaining state-law claims.

### III.  <u>CONCLUSION</u>

For the reasons set forth above, Defendants' motion for summary judgment will be granted, the federal-law claims will be dismissed with prejudice, and the state-law claims will be dismissed without prejudice.  The court will enter an order implementing this opinion.

<u>Dickinson R. Debevoise</u>
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated:          January 18, 2007<u>          </u>